ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2014 NOV 18   PM 4: 50

DEPUTY CLERK _____

UNITED STATES OF AMERICA

v.

PATRICK D. LENARD (1)

RODNEY WYNN (2)

JUAQUAI GREGG (3)

JOSHUA SMART (4)

SHUNTOCQUA SHINE (5)

BRANDON FLORENCE,
   aka "BEETLEJUICE" (6)

CHRISTINA STATON (7)

LASHUNDRA ROGERS (8)

SELENA BALL (9)

RORY MINAFEE (10)

BONNER RAY TUTSON (11)

NO.

**3-14CR-451-B**

## INDICTMENT

The Grand Jury Charges:

### Introduction

1.      Beginning no later than July 12, 2012, and continuing until on or about November 4, 2014, in the Dallas Division of the Northern District of Texas and elsewhere, defendant **Patrick D. Lenard** ran a violent drug trafficking operation (hereinafter "Lenard DTO") from the Pleasant Grove area of South Dallas and while incarcerated at the Dallas County Jail.

2.      **Lenard** conspired with other individuals, including but not limited to,

defendants **Rodney Wynn**, **Juaquai Gregg**, **Joshua Smart**, **Shuntocqua Shine**, **Brandon Florence**, also known as "**Beetlejuice**," **Christina Staton**, **Lashundra Rogers**, **Selena Ball**, **Rory Minafee**, and **Bonner Ray Tutson** to carry on the illegal activities of the Lenard DTO.

3.     The Lenard DTO trafficked in large quantities of illegal narcotics including kilogram quantities of cocaine, heroin, and marijuana.   In furtherance of its drug-trafficking activities, the Lenard DTO engaged in violent acts, including kidnapping, assault, beatings, and torture, towards and of individuals who **Lenard** believed had defied or crossed the Lenard DTO, including **Lenard's** own family members.

4.     The Lenard DTO sought to intimidate and bribe individuals that the Lenard DTO believed might assist law enforcement in investigating and prosecuting the Lenard DTO.

5.     In addition, the Lenard DTO took actions to subvert and manipulate state investigative and legal proceedings against the Lenard DTO.

## Defendants

At all times relevant to this Indictment:

6.     Defendant **Patrick D. Lenard** was a resident of the Pleasant Grove area of South Dallas, Texas.  For significant periods of time between on or about November 26, 2012, until on or about the date of this Indictment, **Lenard** was incarcerated at the Dallas County Jail.  While incarcerated, **Lenard** had wide-ranging telephone access and was able to contact co-conspirators to further the activities of the Lenard DTO.

7.     Defendant **Rodney Wynn** was a resident of Kaufman, Texas.   A state

warrant for his arrest was issued in November 2012 and **Wynn** was added to the State of Texas's most wanted list in September 2014. **Wynn** remains at large and a fugitive.

8.    Defendant **Juaquai Gregg** was a resident of Dallas, Texas. Between on or about November 12, 2012, until on or about March 31, 2014, **Gregg** was incarcerated at the Dallas County Jail.

9.    Defendant **Joshua Smart** was a resident of Dallas, Texas. Between on or about December 3, 2012, until on or about November 4, 2014, **Smart** was incarcerated at the Dallas County Jail. **Smart** is a relative of **Lenard**.

10.    Defendant **Shuntocqua Shine** was a resident of Dallas, Texas. **Shine** managed and operated the Groveside Tobacco Gallery, located at 115 N. Jim Miller Road, in Dallas, Texas. Between on or about November 13, 2012, until on or about November 20, 2012, **Shine** was incarcerated at the Dallas County Jail.

11.    Defendant **Brandon Florence**, also known as "**Beetlejuice**," was a resident of Dallas, Texas.

12.    Defendant **Christina Staton** was a resident of Dallas, Texas. Certain co-conspirators referred to and called **Staton** by the derogatory term "Fatass."

13.    Defendant **Lashundra Rogers** was a resident of Mesquite, Texas. **Rogers** was one of **Lenard's** girlfriends for a period of time relevant to this Indictment.

14.    Defendant **Selena Ball** was a resident of Desoto, Texas. Between on or about September 23, 2013, and on or about May 27, 2013, **Ball** was an Electronic Monitoring Officer for the Dallas County Community Supervision & Corrections Department. As part of her duties, **Ball** was assigned to monitor **Lenard** on or about

September 27, 2013, until on or about May 27, 2014.  In addition, **Ball** became and was one of **Lenard's** girlfriends for a period of time relevant to the Indictment.

15.     Defendant **Rory Minafee** was a resident of Dallas, Texas.

16.     Defendant **Bonner Ray Tutson** was a resident of Dallas, Texas.

<u>Count One</u>
Conspiracy to Commit Kidnapping
[Violation of 18 U.S.C. § 1201(c) (18 U.S.C. § 1201(a)(1)); 18 U.S.C. § 2.]

17.     The allegations contained in paragraphs 1 through 16 are realleged and fully incorporated herein.

18.     On or about November 10, 2012, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Patrick Lenard**, **Rodney Wynn**, **Juaquai Gregg**, **Joshua Smart**, and **Shuntocqua Shine** knowingly and willfully did combine, conspire, and agree with each other and with other persons both known and unknown to the Grand Jury to commit kidnapping, that is to seize, confine, kidnap, abduct, and carry away and hold an individual known to the Grand Jury as "Victim A," the victim, for some purpose and benefit, that is to obtain money that the defendants believed was in the custody or control of Victim A, and the defendants did use instrumentalities of interstate commerce, to wit:  (1) a firearm, (2) motor vehicles, and (3) cellular telephones, in committing and in furtherance of the commission of this offense.

### **Objects of the Conspiracy**

19.     **Lenard** and his co-conspirators sought to kidnap, assault, beat, and torture Victim A in an effort to locate money or other items of value that they believed Victim A had stolen from the Lenard DTO and to send a message to other individuals who engaged in narcotics trafficking with the Lenard DTO.  Certain co-conspirators engaged in the conspiracy to kidnap Victim A for the purpose of making money as **Lenard** had promised large payments for the location and capture of Victim A.

## Manner and Means of the Conspiracy

20. It was part of the conspiracy that defendant **Lenard** asked other co-conspirators to locate Victim A in exchange for money or other things of value.

21. Once located, **Lenard** and other co-conspirators, including **Wynn**, **Gregg**, **Smart**, and **Shine** formulated a plan to detain and capture Victim A.

22. **Lenard**, **Wynn**, **Gregg**, **Smart**, and **Shine** captured and assaulted Victim A, forcing him into a car at gunpoint.

23. **Lenard**, **Wynn**, **Gregg**, **Smart**, and **Shine** utilized instrumentalities of interstate and foreign commerce in committing and in furtherance of the commission of this offense, including the use of a firearm, motor vehicles, and cellular telephones.

24. Once captured, defendants **Lenard**, **Wynn**, **Gregg**, **Smart**, and **Shine** transported Victim A to an apartment where he could be beaten and tortured in an effort to locate things of value that the Lenard DTO believed Victim A had taken from the Lenard DTO.

## Overt Acts in Furtherance of the Conspiracy

25. In or about early November 2012, **Lenard** approached **Shine** and offered **Shine** $10,000 to locate Victim A for **Lenard**. **Lenard** told **Shine** that Victim A had stolen money from **Lenard**. **Shine** agreed to assist **Lenard**, even though **Shine** knew that **Lenard** intended to cause Victim A harm.

26. On or about November 9, 2012, **Lenard** called **Shine** on a cellular telephone and told **Shine** that he believed Victim A was located at a certain apartment complex in Dallas, Texas and instructed **Shine** to perform reconnaissance at the

apartment complex. **Shine** agreed, visited the apartment complex, and located Victim A

there. **Shine** advised **Lenard** that she had located Victim A. Before **Lenard** could arrive

at the apartment complex, **Shine** lost track of Victim A.

27.     The following day, on or about November 10, 2012, **Lenard** called Shine

on a cellular telephone and asked **Shine** to pick **Lenard** up in the vehicle that **Shine** was

driving (an Infiniti I35).

28.     **Shine**, and another individual, known herein as J.A., met with **Lenard** at an

apartment complex in Dallas, Texas. **Shine**, **Lenard**, and J.A. then entered the Infiniti

I35 and began driving to locations as instructed by **Lenard**. Per **Lenard's** instruction,

**Shine's** vehicle was followed by another vehicle (a Nissan Sentra) occupied by **Smart**

and **Gregg**.

29.     On the same day, on or about November 10, 2012, at approximately 2:00

p.m., certain co-conspirators observed Victim A arrived at a Chevron gas station, located

at 2606 N. Stemmons Freeway, Dallas, Texas. Victim A was driving a Chevrolet

Camaro. Victim A exited the Chevrolet Camaro and entered the Chevron convenience

store.

30.     While in **Shine's** vehicle, **Lenard** spoke with **Gregg** on his cellular

telephone regarding the location of Victim A. **Lenard** directed **Shine** to travel to the

Chevron gas station located at 2606 N. Stemmons Freeway, Dallas, Texas.

31.     **Lenard** instructed **Shine** that she needed to assist **Lenard**, **Wynn**, **Smart**,

and **Gregg** in capturing Victim A if **Shine** wanted to collect the $10,000 that he had

promised to pay her. **Shine** agreed.

32.     Shortly after Victim A's arrival at the Chevron, **Lenard**, **Wynn**, **Gregg**, **Smart**, **Shine**, and J.A. also arrived at the Chevron and identified the presence of Victim A. **Lenard** gave instructions to the co-conspirators.

33.     While Victim A was inside the Chevron convenience store, **Lenard** approached Victim A's vehicle (the Chevrolet Camaro), opened the driver's door, and popped the trunk, and stood at the back of the vehicle.

34.     **Smart** and **Gregg** exited their vehicle and took positions surrounding the Chevron convenience store.

35.     **Shine** and J.A. parked **Shine's** vehicle (the Infiniti I35) in front of Victim A's vehicle (the Chevrolet Camaro).

36.     Minutes later, when Victim A observed the presence of **Lenard** and his co-conspirators, Victim A began to run in an attempt to escape from the co-conspirators. **Lenard**, **Wynn**, **Gregg**, and **Smart** chased Victim A on foot.

37.     **Shine** followed Victim A in the Infiniti I35 and as Victim A attempted to run out of the Chevron parking lot, **Shine** struck Victim A with the Infiniti I35 at a high rate of speed. Victim A fell to the ground but immediately got up and continued to run from the co-conspirators.

38.     **Lenard**, **Wynn**, **Gregg**, and **Smart** continued to chase Victim A on foot and **Shine** continued to chase Victim A with the Infiniti I35. **Shine** struck Victim A with her car again. Victim A again fell to the ground and was unable to continue to run from the co-conspirators.

39.     **Lenard**, **Wynn**, **Gregg**, and **Smart** assaulted Victim A and forced Victim

A into the back seat of **Shine's** vehicle.

40.     The co-conspirators were in possession of a firearm, which they used to intimidate and force Victim A into the vehicle.

41.     In an effort to restrain Victim A, **Wynn**, who was much larger than Victim A, laid on top of Victim A, making it difficult for Victim A to move or to even breathe.

42.     **Shine** drove her vehicle (now occupied by J.A., **Wynn**, and Victim A) at a high rate of speed away from the Chevron northbound on N. Stemmons Freeway, with the back right door open and Victim A's legs hanging out.

43.     While in the vehicle, **Shine** instructed other co-conspirators to check Victim A's pocket for money.

44.     **Smart** and **Gregg** ran back to the Nissan Sentra, entered the vehicle and followed the Infiniti I35 northbound on N. Stemmons Freeway.

45.     **Lenard** entered Victim A's Chevrolet Camaro, started the car, and followed the Nissan Sentra and Infiniti I35. He did this without Victim A's permission.

46.     The co-conspirators took Victim A to an apartment. Victim A was forced into the apartment at gunpoint. Once in the apartment, Victim A was stripped naked and beaten by **Wynn**, **Smart**, and **Gregg**.

47.     Victim A was punched, kicked, and forced into a bathtub. **Wynn**, **Smart**, and **Gregg** repeatedly burned Victim A with a hot skillet in an attempt to get Victim A to reveal where the money that he had stolen from the Lenard DTO was located.

48.     **Shine**, with J.A.'s assistance, drove the Infiniti I35 to another location and washed and cleaned the car because it contained Victim A's blood and other evidence of

the assault and kidnapping.

In violation of 18 U.S.C. § 1201(c) (18 U.S.C. § 1201(a)(1)); 18 U.S.C. § 2.

<u>Count Two</u>
Using, Carrying, and Brandishing, a Firearm
During or in Relation to a Crime of Violence
(Violation of 18 U.S.C. § 924 (c)(1)(A)(ii))

49.　The allegations contained in paragraphs 1 through 48 are realleged and fully incorporated herein.

50.　On or about November 10, 2012, in the Dallas Division of the Northern District of Texas, the defendants, **Patrick Lenard**, **Rodney Wynn**, **Juaquai Gregg**, **Joshua Smart**, and **Shuntocqua Shine,** during and in relation to a crime of violence, namely Conspiracy to Commit Kidnapping, as alleged in Count One, in violation of 18 U.S.C. § 1201(c), for which the defendants may be prosecuted in a court of the United States, did knowingly use, carry, and brandish a firearm, to wit: a handgun.

In violation of 18 U.S.C. § 924(c)(1)(A)(ii).

Count Three
Kidnapping
[Violation of 18 U.S.C. § 1201(a) and 18 U.S.C. § 2.]

51.     The allegations contained in paragraphs 1 through 50 are realleged and fully incorporated herein.

52.     On or about November 10, 2012, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Patrick Lenard**, **Rodney Wynn**, **Juaquai Gregg**, **Joshua Smart**, and **Shuntocqua Shine**, aiding and abetting one another, did willfully and unlawfully seize, confine, kidnap, abduct, and carry away and hold an individual known to the Grand Jury as Victim A, the victim, for some purpose and benefit, that is to obtain money that the defendants believed was in the custody or control of Victim A, and the defendants did use instrumentalities of interstate commerce, to wit: (1) a firearm, (2) motor vehicles, and (3) cellular telephones, in committing and in furtherance of the commission of this offense.

In violation of 18 U.S.C. § 1201(a) and 18 U.S.C. § 2.

<u>Count Four</u>
Conspiracy to Possess with an Intent to Distribute a Controlled Substance
[Violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.]

53.     The allegations contained in paragraphs 1 through 52 are realleged and fully incorporated herein.

54.     Between on or about July 12, 2012, and on or about November 4, 2014, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Patrick Lenard, Rodney Wynn, Juaquai Gregg, Joshua Smart, Shuntocqua Shine, Brandon Florence,** also known as "**Beetlejuice,**" **Christina Staton, Lashundra Rogers, Selena Ball, Rory Minafee,** and **Bonner Ray Tutson,** and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to commit the following offenses against the United States:

a. to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A);

b. to possess with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and

c. to possess with intent to distribute a detectable amount of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

In violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

## Manner and Means of the Conspiracy

55. It was part of the conspiracy that the Lenard DTO:

a. maintained and operated stash houses for illegal narcotics;

b. obtained, possessed, and distributed illegal narcotics, including cocaine, heroin, and marijuana, to other individuals;

c. collected, transported, maintained, and distributed drug proceeds;

d. negotiated and discussed drug transactions over their cellular telephones and from phones maintained at the Dallas County Jail;

e. used violence and threats of violence to enforce the goals of the Lenard DTO;

f. recruited and convinced individuals who were responsible for reporting illegal activities to alter, modify, and fail to report such activities in an effort to further the goals of the Lenard DTO; and

g. obstructed or attempted to obstruct the investigation and prosecution of the Lenard DTO and its individual members.

## Overt Acts in Furtherance of the Conspiracy

56. In furtherance of the conspiracy, the defendants, and others known and unknown to the Grand Jury, committed the following overt acts in the Dallas Division of the Northern District of Texas and elsewhere:

a. On or about July 12, 2012, **Lenard** and another unindicted co-conspirator, known herein as J.E.A., transported large sums of cash (approximately $30,000) belonging to **Lenard** that they had collected from drug trafficking activities. **Lenard** and

J.E.A. were stopped by a Texas Highway Patrol Trooper in Walker County, Texas and the cash was located along with small amounts of marijuana.

      b.   As discussed in greater detail above, on or about November 10, 2012, **Lenard, Wynn, Gregg, Smart**, and **Shine** kidnapped and tortured Victim A because they believed Victim A had stolen money or other things of value that represented proceeds of illegal narcotics trafficking from the Lenard DTO.

      c.   Between on or about September 27, 2013, and on about May 27, 2014, **Ball** was assigned to serve as the Electronic Monitoring Officer for the Dallas County Community Supervision & Corrections Department for **Lenard**. As admitted to by **Lenard** in a state court proceeding, **Ball** and **Lenard** engaged in a romantic relationship despite her position and despite the clear conflict that this relationship created. **Lenard** convinced **Ball** to alter, modify or fail to report violations of **Lenard's** conditions of release. For example, per his conditions of release, **Lenard** was required to limit his travel to certain areas within Dallas to avoid contact with co-conspirators. **Ball** was responsible for reviewing and identifying locations that were visited by **Lenard** as reflected in GPS records from **Lenard's** monitoring bracelet. **Ball** purposefully failed to report violations of these conditions by **Lenard**, even though she knew of the violations. In fact, **Lenard** violated his conditions of release by approaching, confronting, and attempting to intimidate co-conspirators and witnesses to the kidnapping discussed above.

      d.   Between November 26, 2012, until on or about the date of this Indictment, **Lenard** conducted and managed the drug-trafficking activities of the Lenard DTO from

his jail cell at the Dallas County Jail. **Lenard** utilized jail phone to place calls to co-conspirators. On several of these telephone calls, **Lenard** instructed another co-conspirator to conference in a third co-conspirator so that **Lenard** could give instructions or receive information from that individual related to the Lenard DTO's drug-trafficking activities.

e.    For example, on or about June 7, 2014, **Lenard, Staton**, and **Ball** engaged in a three-way phone conversation where they discuss illegal drug proceeds obtained by the Lenard DTO.

f.    On or about June 15, 2014, **Lenard** and **Ball** engaged in a phone conversation where they discuss illegal drug proceeds obtained by the Lenard DTO.

g.    On or about June 21, 2014, **Lenard** and **Ball** engaged in a phone conversation where they discuss illegal drug proceeds obtained by the Lenard DTO.

h.    On or about July 14, 2014, **Lenard** and **Ball** engaged in multiple phone conversations regarding illegal narcotics transactions and money obtained from these transactions. **Lenard** instructed **Ball** to hide the referenced drug proceeds. On one of these calls, **Ball** conferences in **Florence** and **Lenard** provides instructions to **Florence** regarding certain drug transactions.

i.    On or about July 15, 2014, **Lenard** and **Ball** engaged in multiple phone conversations regarding illegal narcotics transactions and money obtained from these transactions. **Ball** actively counts drug proceeds on at least one of these calls.

j.    On or about August 4, 2014, **Lenard** engaged in phone conversations with **Ball** and **Florence,** and another unindicted co-conspirator regarding illegal narcotics

transactions, including one planned for that day, and money obtained from these transactions. These conversations include discussions regarding approximately $66,000 obtained from these transactions.

k.   On or about August 6, 2014, **Lenard** engaged in a phone conversation with **Staton**, while **Florence** is present with **Staton** regarding illegal narcotics transactions and money obtained from these transactions.

l.   On or about August 6, 2014, **Lenard** and **Florence** engaged in a phone conversation where they discuss recent kilogram quantity cocaine drug transactions that **Florence** engaged in at the direction of **Lenard**.

m.   On or about August 13, 2014, at **Lenard's** instruction, **Florence** and **Ball** exchanged cash proceeds from illegal narcotics transactions at Cliff's Check Cashing store at 2310 Martin Luther King, Jr. Boulevard in Dallas, Texas.

n.   On or about October 4, 2014, **Lenard** engaged in a phone conversation with **Florence** and **Staton** regarding illegal narcotics transactions and money obtained from these transactions.

o.   On or about October 20, 2014, Victim A was requested to appear at the Frank Crowley Courts building to meet with state investigators. **Florence** followed Victim A to the Frank Crowley Courts building. Victim A did not travel with **Florence** to the Frank Crowley Courts building and did not know he was being followed.

p.   When Victim A arrived, he was served with a Federal Grand Jury Subpoena. As Victim A left the Frank Crowley Courts building, **Florence** pulled his vehicle to the curb so that Victim A would be able to observe the presence of **Florence's**

vehicle.

      q.   Later that day, on or about October 20, 2014, **Lenard** engaged in numerous phone conversations with **Staton**, **Florence**, **Rogers**, and **Ball**.  In one of the earlier calls that day, **Florence** described Victim A's arrival at the Frank Crowley Courts building and described the efforts **Florence** took to identify the license plate of the vehicle Victim A drove.

      r.   Later in the day, **Lenard** spoke directly with Victim A and encouraged Victim A to not get involved in law enforcement or judicial proceedings regarding the kidnapping.  **Lenard** also discussed the evidence against him regarding the kidnapping and encouraged Victim A not to answer the phone when called by law enforcement authorities.

      s.   In later calls that day, on or about October 20, 2014, co-conspirators discussed the fact that Victim A had received a subpoena and what that meant.  The co-conspirators also discussed the time that Victim A was scheduled to appear before the Federal Grand Jury the following day.

      t.   On or about October 20, 2014, **Lenard** instructed **Florence** to pass money to Victim A.  This money was being provided to Victim A to enable, assist, and encourage Victim A to not testify before the Federal Grand Jury.

      u.   On or about October 20, 2014, **Florence** met with Victim A inside a Denny's at a Flying J truck stop in the Northern District of Texas for the purpose of enabling, assisting, and encouraging Victim A to not testify before the Federal Grand Jury.

v.   In addition, on or about October 20, 2014, **Lenard** and **Florence** devised a scheme to move Victim A out of town so that he would not be available to assist law enforcement in the investigation or later legal proceedings regarding **Lenard** and the Lenard DTO.

w.   On or about October 21, 2014, **Lenard** engaged in phone conversations with **Staton** and discussed their desire to have Victim A "go missing."   **Lenard** instructed **Staton** to follow Victim A to the federal courthouse where Victim A was supposed to appear in compliance with the Federal Grand Jury subpoena. **Staton** agreed.

x.   On or about October 21, 2014, **Staton**, using **Roger's** vehicle, followed Victim A to the Earle Cabell Federal Courthouse, located in Dallas, Texas.

y.   Later that day, on or about October 21, 2014, **Lenard** engaged in phone conversations with **Staton** and **Florence**.  **Staton** reported that Victim A had visited the federal courthouse.

z.   Later that day, on or about October 21, 2014, **Lenard** engaged in phone conversations with Victim A and **Staton**.  **Lenard** discussed what Victim A should say if questioned further and stated that he (**Lenard**) was not present at the kidnapping.

aa.   On or about October 22, 2014, **Lenard** engaged in additional phone conversations with Victim A where he discussed providing Victim A with additional money to be paid to Victim A to enable, assist, and encourage Victim A to not testify before the Federal Grand Jury.  **Lenard** indicated that the money to be provided to Victim A would be the proceeds of illegal drug transactions.

bb.  On or about October 22, 2014, **Lenard** engaged in phone conversations

with **Staton**, **Florence**, and **Rogers**.  **Lenard** instructs **Staton** and **Rogers** to determine how to record future phone calls with Victim A.

      cc.  On or about October 22, 2014, **Lenard** engaged in phone conversation with Victim A, while **Staton** and **Rogers** were listening to the call.  **Lenard** instructed **Staton** and **Rogers** to record the call.  **Lenard** asks Victim A to state that **Lenard** was not caught on the surveillance footage recovered by investigators.  **Lenard** also asks Victim A to state that **Lenard** did not attempt to have Victim A leave the Dallas area to avoid testifying.  Once Victim A hung up on the call, **Lenard** asked **Staton** and **Rogers** if they had been able to record the call.

      dd.  Later that day, on or about October 22, 2014, **Lenard** engaged in a phone conversation with **Rogers**, **Staton**, and **Florence** regarding the need to record Victim A's statements at an upcoming meeting between **Florence** and Victim A.

      ee.  On or about October 22, 2014, at the request of **Lenard**, **Florence** met with Victim A at a Denny's at a Flying J truck stop in the Northern District of Texas.  During this meeting, **Florence** passed money to Victim A for the purpose of enabling, assisting, and encouraging Victim A to not cooperate with the Federal Grand Jury investigation into the Lenard DTO.

      ff.  On or about November 4, 2014, **Minafee** knowingly possessed distribution amounts of cocaine and a firearm in furtherance of the drug trafficking activities. **Minafee** obtained these drugs from the Lenard DTO and provided a portion of the proceeds to the Lenard DTO.

      gg.  On or about November 4, 2014, **Tutson** knowingly possessed distribution

amounts of marijuana. **Tutson** obtained these drugs from the Lenard DTO and provided a portion of the proceeds to the Lenard DTO.

hh. On or about November 4, 2014, **Ball** was in possession of approximately $27,528 in cash that represented the proceeds of illegal drug trafficking of the Lenard DTO.

### Count Five
### Conspiracy to Commit Intimidation to Influence Testimony
[Violation of 18 U.S.C. §§ 1512(k) and 1512(b)(1) and 18 U.S.C. § 2]

57.    The allegations contained in paragraphs 1 through 56 are realleged and fully incorporated herein.

58.    Between on or about November 10, 2012, and on or about November 4, 2014, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Patrick Lenard**, **Brandon Florence,** also known as "**Beetlejuice**," **Christina Staton**, **Lashundra Rogers**, and **Selena Ball**, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to intimidate, threaten, corruptly persuade, and engage in misleading conduct toward an individual known to the Grand Jury as Victim A, by attempting to convince Victim A to ignore or purposefully non-comply with a Federal Grand Jury Subpoena and by threatening or attempting to intimidate Victim A with regard to Victim A's cooperation with law enforcement authorities, with the intent to influence, delay, prevent, the testimony of Victim A in an official proceeding, that is, a Federal Grand Jury investigation.

In violation of §§ 1512(k) and 1512(b)(1) and 18 U.S.C. § 2.

## Count Six
Conspiracy to Commit Tampering With a Witness, Victim, or Informant
by Intimidation, Threats, Corrupt Persuasion, or Misleading Conduct
[Violation of 18 U.S.C. §§ 1512(k),1512(b)(2)(A), 1512(b)(2)(D), and 18 U.S.C. § 2]

59.     The allegations contained in paragraphs 1 through 58 are realleged and fully incorporated herein.

60.     Between on or about November 10, 2012, and on or about November 4, 2014, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Patrick Lenard**, **Brandon Florence**, also known as **"Beetlejuice,"** **Christina Staton**, **Lashundra Rogers**, and **Selena Ball**, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to knowingly attempt to, intimidate, threaten, corruptly persuade, and engage in misleading conduct toward an individual known to the Grand Jury as Victim A by:

a.  attempting to convince Victim A to ignore or purposefully non-comply with a Federal Grand jury Subpoena,

b.  attempting to pay and actually paying money to Victim A in order to have Victim A leave the State of Texas so that law enforcement could not or would not find him, and

c.  threatening or attempting to intimidate Victim A with regard to Victim A's cooperation with law enforcement authorities, with the intent to cause and induce Victim A to withhold testimony from an official proceeding, that is, a Federal Grand Jury investigation.

In violation of 18 U.S.C. §§ 1512(k),1512(b)(2)(A), 1512(b)(2)(D), and 18 U.S.C. § 2.

<u>Count Seven</u>
Destruction, Alteration, or Falsification of Records
[Violation of 18 U.S.C. § 1519]

61.     The allegations contained in paragraphs 1 through 60 are realleged and fully incorporated herein.

62.     Between on or about September 27, 2013, and on about May 27, 2014, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Selena Ball**, did knowingly alter, destroy, mutilate, conceal, cover up, falsify, make a false entry in electronic monitoring tracking records, with the intent to impede, obstruct, and influence the investigation and proper administration of the criminal investigation of Patrick D. Lenard, a matter that the defendant knew and contemplated was within the jurisdiction of the Department of Justice, a department and agency of the United States.

In violation of 18 U.S.C. § 1519.

<u>Count Eight</u>
Possession of a Controlled Substance with Intent to Distribute
[Violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)]

63.     The allegations contained in paragraphs 1 through 62 are realleged and fully incorporated herein.

64.     On or about November 4, 2014, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Rory Minafee**, knowingly possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of 21 U.S.C. § 841 (a)(l) and (b)(1)(C).

## Count Nine
### Possession of a Firearm in Furtherance of a Drug Trafficking Crime
[Violation of 18 U.S.C. §§ 924(c)(1)(A)]

65.     The allegations contained in paragraphs 1 through 64 are realleged and fully incorporated herein.

66.     On or about November 4, 2014, in the Dallas Division of the Northern District of Texas, the defendant, **Rory Minafee**, did knowingly possess a firearm in furtherance of a drug trafficking crime (Conspiracy to Possess with Intent to Distribute a Controlled Substance) for which he may be prosecuted in a court of the United States.

In violation of 18 U.S.C. §§ 924(c)(1)(A).

<u>Count Ten</u>
Possession of a Controlled Substance with Intent to Distribute
[Violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)]

67.     The allegations contained in paragraphs 1 through 66 are realleged and fully incorporated herein.

68.     On or about November 4, 2014, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Bonner Ray Tutson**, knowingly possessed with intent to distribute a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of 21 U.S.C. § 841 (a)(l) and (b)(1)(C).

Forfeiture Notice
[21 U.S.C. § 853(a); 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 2461(c); 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c); 18 U.S.C. § 3665]

69.     The allegations contained in paragraphs 1 through 68 are realleged and fully incorporated herein.

70.     Upon conviction for the offense alleged in Counts One and Three of this Indictment and pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the defendants, **Patrick D. Lenard, Rodney Wynn, Juaquai Gregg, Joshua Smart, Shuntocqua Shine, Brandon Florence**, also known as "**Beetlejuice,**" **Christina Staton, Lashundra Rogers, Selena Ball, Rory Minafee,** and **Bonner Ray Tutson** shall forfeit to the United States of America any property, real or personal, constituting or derived from proceeds traceable to the offense.

71.     Upon conviction for the offense alleged in Counts Four, and Ten this Indictment and pursuant to 21 U.S.C. § 853(a), the defendants, **Patrick D. Lenard, Rodney Wynn, Juaquai Gregg, Joshua Smart, Shuntocqua Shine, Brandon Florence, aka "Beetlejuice," Christina Staton, Lashundra Rogers, Selena Ball, Rory Minafee,** and **Bonner Ray Tutson,** shall forfeit to the United States of America all property, real or personal, constituting, or derived from, the proceeds obtained, directly or indirectly, as a result of the offense; and any property, real or personal, used or intended to be used, in any manner or part, to commit or facilitate the commission of the offense.

72.     Upon conviction for the offense alleged in Counts Two and Nine this Indictment and pursuant to 21 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), the defendants, **Patrick D. Lenard, Rodney Wynn, Juaquai Gregg, Joshua Smart, Shuntocqua**

**Shine**, and **Rory Minafee** shall forfeit to the United States of America all property, real

or personal, constituting, or derived from, the proceeds obtained, directly or indirectly, as

a result of the offense; and any property, real or personal, used or intended to be used, in

any manner or part, to commit or facilitate the commission of the offense.

A TRUE BILL

*Angela Brand*

FOREPERSON


SARAH R. SALDAÑA
UNITED STATES ATTORNEY

*Errin Martin / by PJ Meitl*

ERRIN MARTIN
Assistant United States Attorney
Texas Bar No. 24032572
1100 Commerce, Suite 300
Dallas, Texas   75242
Telephone: 214.659.8838
Facsimile: 214.767.4104
Email:  errin.martin@usdoj.gov


P.J. MEITL
Assistant United States Attorney
District of Columbia Bar No. 502391
Virginia Bar No. 73215
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8680
Facsimile: 214.659.8812
Email: philip.meitl@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

PATRICK D. LENARD (1), RODNEY WYNN (2),
JUAQUAI GREGG (3), JOSHUA SMART (4)
SHUNTOCQUA SHINE (5),
BRANDON FLORENCE (6), CHRISTINA STATON (7)
LASHUNDRA ROGERS (8), SELENA BALL (9)
RORY MINAFEE (10), BONNER RAY TUTSON (11)

## INDICTMENT

18 U.S.C. § 1201(c) (18 U.S.C. § 1201(a)(1)); 18 U.S.C. § 2
Conspiracy to Commit Kidnapping

18 U.S.C. § 924 (c)(1)(A)(ii)
Using, Carrying, and Brandishing, a Firearm During or in
Relation to a Crime of Violence

18 U.S.C. § 1201(a) and 18 U.S.C. § 2
Kidnapping

21 U.S.C. § 846 and 18 U.S.C. § 2
Conspiracy to Possess with an Intent to Distribute a Controlled Substance

18 U.S.C. §§ 1512(k) and 1512(b)(1) and 18 U.S.C. § 2
Conspiracy to Commit Intimidation to Influence Testimony

18 U.S.C. §§ 1512(k),1512(b)(2)(A), 1512(b)(2)(D), and 18 U.S.C. § 2
Conspiracy to Commit Tampering With a Witness, Victim, or Informant
by Intimidation, Threats, Corrupt Persuasion, or Misleading Conduct

18 U.S.C. § 1519
Destruction, Alteration, or Falsification of Records

21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2
Possession of a Controlled Substance with Intent to Distribute

18 U.S.C. §§ 924(c) and 2
Possession of a Firearm in Furtherance of a Drug Trafficking Crime

21 U.S.C. § 853(a); 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 2461(c); 18 U.S.C. §
924(d) and 28 U.S.C. § 2461(c); 18 U.S.C. § 3665
Forfeiture Notice

10 Counts

A true bill rendered

DALLAS _____ FOREPERSON

Filed in open court this ____ day of November, 2014.

_____ Clerk

**Warrant to be issued to** RODNEY WYNN (2), CHRISTINA STATON (7) &
SELENA BALL (9); SHUNTOCQUA SHINE (5) IS ON BOND; ~~PATRICK D.~~
~~LENARD (1),~~ JUAQUAI GREGG (3), JOSHUA SMART (4)
BRANDON FLORENCE (6), LASHUNDRA ROGERS (8), RORY MINAFEE (10),
BONNER RAY TUTSON (11) ARE IN FEDERAL CUSTODY

_____
UNITED STATES ~~DISTRICT~~/MAGISTRATE JUDGE
Magistrate Complaints Pending: 3:14-MJ-731-BF;  3:14-MJ-732-BF;  3:14-MJ-743-BH